[Civ. No. 18207.   Second Dist., Div. Three.   Aug. 20, 1951.]

MARIE MIDDLEKAUF, Respondent, v. ALICE VINSON
et al., Appellants.

Russell E. Parsons and Morris Lavine for Appellants.

George W. Rochester for Respondent.

VALLÉE, J.—Appeal by defendant Alice Vinson and
cross-complainants Alice Vinson and Walter Vinson, husband
and wife, from a judgment decreeing that a loan of $30,000

made by Alice Vinson to plaintiff and cross-defendant was a usurious transaction.

Plaintiff at all times was the owner of a parcel of realty at Oceanside, California. On March 14, 1946, she executed a $40,000 promissory note in favor of A. L. Gindling, due March 15, 1952, bearing interest at the rate of 5 per cent per annum from March 15, 1946, interest payable monthly beginning April 15, 1946, continuing to and including September 15, 1946, and providing for payment of principal and interest in installments of $400 or more on the 15th day of each month beginning October 15, 1946, continuing to and including February 15, 1952. The note was secured by a trust deed (a first lien) upon the Oceanside property. Subsequently, Gindling assigned the note and trust deed to Peggy Shirk, plaintiff's sister.

Prior to March 25, 1949, plaintiff commenced the erection of a building on the property for the staging of athletic matches and other amusements. She became hard pressed for money, was about to lose her license from the California Athletic Commission, and was only able to partially complete the building. Alice Vinson, an acquaintance of some 20 years, who was familiar with all phases of plaintiff's activities in connection with the property, agreed to loan her $30,000 for the completion of the building. On March 25, 1949, they opened an escrow. The escrow officer testified Mrs. Vinson told him "she was to make a loan to Mrs. Middlekauf for the purpose of completing a building at Oceanside . . . and she was to assign or cause to be assigned a note and trust deed for the sum of $40,000 that was then in existence, for security for this loan; that the loan money was to be put in escrow and paid out under a building contract for the construction of this boxing arena." The escrow officer told the parties that in his opinion "this sort of loan" was usurious. Notwithstanding this admonition, Mrs. Vinson stated that "if the title company would insure it she would take it along that line." Escrow instructions were signed by the parties, providing that the $40,000 note, secured by the trust deed, be assigned by Peggy Shirk (assignee of Gindling) to Mrs. Vinson, and the $30,000 be deposited by Mrs. Vinson "to be used for building purposes and to be released upon demand and affidavit of the Owner, to release to the contractor for said building purposes." The withdrawals were approved by both parties. At the time Mrs. Vinson received the $40,000 note and trust deed she knew plaintiff had never made any payment thereon and

that the note was then in default. The matter of repayment was discussed by the parties but not incorporated in the escrow instructions because "it was such an indefinite time as to when the place was to be finished or the amount to be paid." Payments for the completion of the building were made over a period of months and the escrow was finally closed in the early part of September, 1949.

On September 26, 1949, Alice Vinson signed a notice of default and election to sell under the trust deed, stating there was due "the sum of $40,000.00 principal, together with interest thereon at the rate of 5% per annum from April 15, 1946." The notice was recorded October 6, 1949.

On November 23, 1949, plaintiff filed the present action, alleging the transaction was usurious and seeking to enjoin the foreclosure of the trust deed. In her answer, Alice Vinson alleged that she told plaintiff she did not have the $30,000 but would have to get it from her husband; thereupon plaintiff represented to her that if she, defendant, could procure the $30,000 she would make a partnership agreement with her, give her a half interest in the operation of the business, and lease the concessions to her husband. Defendant Alice Vinson also filed a cross-complaint for declaratory relief, an accounting, and the appointment of a receiver to take possession of, operate and conduct plaintiff's amusement establishment. Prior to the trial, and on December 16, 1949, plaintiff tendered the sum of $3,400.25, with the balance of the $30,000 to be paid on February 15, 1950, which offer was not accepted. At the trial, the sum of $30,000 was tendered into court for payment of the full amount of the loan.

Among other matters, the court found it was true, as alleged in plaintiff's complaint, that plaintiff borrowed $30,000 directly from Alice Vinson and assigned the $40,000 promissory note and trust deed to her; that Alice Vinson knew that no payments had been made on the note of $40,000, and "that there was due and owing thereon at said time, subject to the terms thereof, the principal sum of $40,000, plus interest"; that for the loan and use thereof Alice Vinson "contracted to receive for said loan the sum of $40,000 in addition to 5% per annum upon said $40,000, so provided to be paid by the terms of the said promissory note and trust deed hereinabove mentioned, when in fact only the sum of $30,000 was loaned to and used by the plaintiff"; and that none of the allegations of the affirmative defenses set forth in Alice Vinson's answer, nor the allegations of her cross-complaint, were true. The

court concluded that the transaction was usurious and void; that Alice Vinson was not entitled to any interest upon the loan, but was entitled to the $30,000, theretofore tendered; that within 15 days after the judgment becomes final plaintiff should pay the sum of $30,000 to Alice Vinson; that plaintiff was entitled to a permanent injunction enjoining Alice Vinson and the trustee under the trust deed from selling the realty or from asserting any lien of any kind under the trust deed; and that plaintiff was entitled to a duly executed reconveyance. Judgment was entered accordingly.

Appellants urge that the findings and judgment are not supported by the record. While the evidence is conflicting upon some of the elements of the transaction, the findings and judgment are adequately supported. ▉ Whether a transaction is usurious is a question of fact (*Traders Credit Corp.* v. *Thyle,* 116 Cal.App. 252, 254 [2 P.2d 568]), and where findings on this issue are adverse it is incumbent upon an appellant to show wherein the findings have no substantial support in the evidence. ▉ This appellants have failed to do. They merely set forth in their briefs portions of the evidence which support their theory of the case and which, at the most, created but a conflict in the evidence. A review of the evidence shows that all of the parties to the transaction treated it as simply a contract to loan money for the completion of plaintiff's building. Mrs. Vinson testified, "I told him [the escrow officer] I was making a loan of $30,000; I was getting a $40,000 trust deed that had been made in 1946 and told him that the money was to be used for the construction of a building." She sought to prove that in addition to the loan it was agreed that plaintiff would give her a half interest in the business and assign the concessions to her husband, and claims that a partnership or a joint venture was established by the acts and conduct of the parties. This was emphatically denied by the plaintiff. In addition, Mrs. Vinson admitted that she had never made a written demand upon plaintiff for any partnership agreement nor had she ever made a demand for an accounting prior to the filing of this action. Since the evidence on this issue was conflicting, we are bound by the trial court's findings. The only relationship between the parties, as found by the trial court and supported by the evidence, was that of borrower and lender.

Under the law, the maximum interest Mrs. Vinson could demand for her loan was 10 per cent. (Const., art. XX, § 22; Stats. 1919, p. lxxxiii, 2 Deering's Gen. Laws, Act 3757.)

When she signed the declaration of default and election to sell on September 27, 1949, the $30,000 loan had been in effect for a period of but six months and two days. At that time there was due on the $40,000 note, including interest from April 15, 1946, the sum of approximately $46,840. A simple computation of the maximum interest which Mrs. Vinson could charge for the $30,000 loan clearly indicates that, under the guise of foreclosing the trust deed under the circumstances here, she was attempting to receive a benefit in excess of the rate permitted by law.

Appellants' contention that the court erred in denying their motion to reopen the case 15 days after the parties had rested for further testimony on the partnership phase of the case is without merit. On the hearing of the motion the court asked counsel whether the new evidence would be different from that introduced at the trial, to which counsel stated "No. . . . it may be cumulative in some respects." There was no abuse of discretion.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 18, 1951.