[Civ. No. 19689. Second Dist., Div. Three. Nov. 4, 1953.]

WALTER A. POSTIER et al., Appellants, v.
HUGO LANDAU, Respondent.

A. J. O'Connor for Appellants.

Bauder, Gilbert, Thompson & Kelly for Respondent.

VALLÉE, J.—Appeal by plaintiffs from a judgment entered on a verdict of a jury in an action for damages for personal injuries and damage to property arising out of a collision between two automobiles.

The only assignment of error is that the evidence is insufficient to support the verdict. Pursuant to the frequently repeated rule, the evidence and the reasonable inferences therefrom will be stated in the light most favorable to defendant-respondent.

The accident occurred about 12:30 p. m. on January 11, 1951, in the apex of a curve on the East Rim Drive of the Grand Canyon, a snow-covered highway in Arizona. The day was overcast, but visibility was good. The highway at the scene of the collision was 18 feet wide in pavement, with shoulders on both sides. It was covered with about four inches of fresh snow. The center line was not visible. The pavement was slippery. There was only one set of auto tracks in the snow on the highway. There was not a set for eastbound traffic and another for westbound. The tracks were in the center of the highway for the most part, except where they rounded the curve at the scene of the accident—where they were on the north or right-hand side when going in a westerly direction. The highway was fairly level although it was banked upward to the south side around the curve. On the north side there was a shallow ditch abutting the shoulder.

Plaintiff-husband, referred to as plaintiff, was driving a Buick in a westerly direction in the tracks in the snow, traveling from 25 to 30 miles an hour. He had been traveling between four and five hours that day, mostly in snow, but did not have chains on his wheels, although he had them in the car. Defendant was driving a Chevrolet in an easterly direction in the tracks, traveling about 15 miles an hour. Plaintiff observed defendant's car when it was about 200 feet away. Defendant observed plaintiff's car when it was from 100 to 150 feet away; applied his brakes slowing down

to between 5 and 7 miles an hour. As plaintiff's car approached that of defendant's, it speeded up. When the cars were from 30 to 40 feet apart, plaintiff's car was "coming" toward defendant's side of the highway. Defendant then applied his brakes with greater force. Plaintiff's car crossed the imaginary center and ran into defendant's car which "was practically stopped at the time of the impact." The impact bounced the two cars from 25 to 30 feet apart—plaintiff's back in the direction he had been coming, and defendant's back in the direction he had been coming and to the north side of the highway. After the collision "the snow was pretty well messed up in there." The cars "had thrown the snow around so you couldn't identify each track." The front end of the Buick was "badly smashed"; the chrome grille was scattered around in the snow. The Chevrolet "wasn't hurt near as bad"; the left-hand fender and part of the grillwork were damaged.

Plaintiff's argument is largely based on the position of the cars after the accident. The Buick was on the right or north side of the highway, headed west "fairly close" to the shallow ditch. The Chevrolet was headed northeast. A ranger, who appeared on the scene shortly after the accident, testified that the Chevrolet was at an angle with the front end pointing down toward the Buick, "but they were separated for some distance," and that it "might have been right on the center line. There's no way of telling exactly just where the center line was." He was asked, "Could you tell from the marks in the snow whether the impact moved the cars to the position where they were stopped?" He replied, "The snow was pretty well messed up in there. They had thrown the snow around so you couldn't identify each track." A traveler, who came on the scene shortly after the collision, testified it was rather difficult to observe where the sides of the road were; that one could easily stay in the center, "but you never knew how close you were getting to the edge, because of the snow"; that the Buick was on the north side, and that he "would judge" the Chevrolet was straddling the center, about three-quarters on the north side, sort of diagonal to the road; that his figures were an approximation.

The evidence we have related as to how the accident happened is that of defendant and his wife who was in the front seat of the car with him. Plaintiff argues that their testimony is incredible and "fantastic." We find nothing improbable in the claim that the accident occurred on the south side of the snow-covered, slippery highway which sloped

to the north, that the Buick came to a standstill on the north side, and that three-fourths of the Chevrolet was on that side. ''Common experience and observation teach us that strange and astonishing things sometimes happen in the world of physical phenomena, and accidents sometimes appear to happen in manner unaccountable. For these reasons an appellate court must be careful not to give to dogmatic and undemonstrated conclusions respecting natural laws precedence over the testimony of apparently credible witnesses; and the mere fact that the admitted circumstances make the story of the witnesses seem improbable will not justify a reversal by an appellate tribunal upon the ground that the verdict is contrary to the evidence.'' (*Austin* v. *Newton,* 46 Cal.App. 493, 498 [189 P. 471].) What was said in Austin is particularly applicable to a case in which the accident happened on a snow-covered slippery highway. There is nothing in the testimony of defendant or his wife which could not have occurred on the highway in its condition as described in the uncontroverted evidence. ''Testimony is not inherently improbable unless it appears that what has been related or described could not have occurred. (*People* v. *Klinkenberg,* 90 Cal.App.2d 608, 627 [204 P.2d 47, 613].) 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the. facts upon which a determination depends.' (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].)'' (*Transcoso* v. *Transcoso,* 96 Cal. App.2d 797, 798 [216 P.2d 172].)

Unless we can say that, under undisputed physical facts, defendant was negligent and plaintiff was not contributively negligent, we must affirm the judgment. It is not sufficient that the story told by defendant and his wife may be improbable. It was for the jury and the trial judge to weigh and balance the probabilities. The trial judge denied plaintiffs' motion for a new trial. We cannot reverse on the ground that the implied findings of the jury are unsupported by the evidence, unless we can say that the facts impliedly found contravene recognized physical laws and that, therefore, the

accident could not have happened in the manner described by defendant and his wife. That we cannot say.

What plaintiffs ask, in effect, is that we try the case *de novo* on the record, reject all of the implied findings of the jury and substitute findings of our own. There is evidence which would have supported contrary findings. That the jury and the trial judge rejected that evidence does not impeach the soundness of their conclusions. Plaintiffs have failed to establish any greater grievance than they might in any case where the evidence would support a conclusion either way, but where the trier of fact has decided it to weigh more heavily for the other party. Such a choice between two permissible views of the evidence is not error.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 30, 1953.