[Civ. No. 19935.   Second Dist., Div. Three.   Mar. 15, 1954.]

A. L. MURPHY, Respondent, v. BERTHA ABLOW,
as Administratrix, etc., Appellant.

Lewis M. Andrews, Chandler, Wright, Tyler & Ward and W. A. Caldecott for Appellant.

Porter C. Blackburn and Paul E. Gervais for Respondent.

VALLEE, J.—Plaintiff brought this action against A. Ablow, referred to as defendant, to recover moneys alleged to have been paid by him to defendant in violation of the usury law.

On March 29, 1950, defendant, through a broker, agreed to loan plaintiff $40,000, to be evidenced by two promissory notes: one for $35,000, due three years after date with interest at 6 per cent, principal and interest payable in monthly installments, the note to be secured by a first deed of trust on a parcel of realty; the other for $5,000, due three years after date with interest at 10 per cent, principal and interest payable in monthly installments, the note to be secured by a second deed of trust on the same property. On April 12, 1950, defendant agreed to loan plaintiff $10,000, to be evidenced by a promissory note due five years after date with interest at 10 per cent, the note to be secured by a second deed of trust on a different parcel of realty.

The loans were effected through separate escrows with the same escrow holder. The escrow with respect to the $40,000

loan was opened on March 29, 1950; that with respect to the $10,000 loan, on April 13, 1950. On April 13, 1950, defendant demanded of plaintiff that he pay him a bonus of $1,750; plaintiff agreed to pay it. The parties executed an instrument directed to the escrow holder, which reads: "You are hereby authorized and instructed to pay A. Ablow the sum of $1,750.00 as a prepaid bonus or consideration for the granting of the $35,000.00 First Trust Deed Loan as described in original escrow instructions dated March 29, 1950." Defendant then paid $38,250 into the escrow with respect to the $40,000 loan, thus taking a credit for the $1,750 bonus. The $1,750 was deducted from the $35,000 loan. The two loans were then consummated.

Plaintiff sued for treble the $1,750 bonus and claimed below that it was an additional charge to obtain the $10,000 loan, and that it was usurious. Defendant claimed it was paid for the $35,000 loan, and that it was not usurious. If the bonus was an additional charge for the $10,000 loan, its exaction was usurious. If it was paid to obtain the $35,000 loan, it was not usurious. No person shall, by charging any fee, bonus, discount, or other compensation, receive from a borrower more than 10 per cent per annum upon any loan of money. (Const., art. XX, § 22.)

▉ The court found that on April 13, 1950, defendant, in order to complete the $10,000 loan and as a bonus for its completion, demanded and required from plaintiff the payment of the further sum of $1,750 and caused it to be added as a purported bonus for the $35,000 loan; that in truth and fact, defendant intended the $1,750 to be charged and claimed as a bonus and extra charge to plaintiff as compensation for the $10,000 loan; that the purported allocation and charge to the $35,000 loan was a subterfuge created and used by defendant for the purpose of evading and circumventing the usury law, and it was a simulated transaction. Judgment for plaintiff for $1,750 and interest followed. Treble damages were not allowed since the action was not brought within one year after payment of the bonus. (2 Deering's Gen. Laws, Act 3757, § 3.) Defendant appealed. Defendant died since the taking of the appeal, and the administratrix of his estate has been substituted in his stead.

Defendant's only point is that there is no substantial evidence to support the findings. His argument is punctuated by such comments as the testimony of plaintiff "beyond any

question'' is false and improbable; there is no evidence in support of the findings ''worthy of belief''; plaintiff contradicted himself; ''it is not possible to swallow'' the testimony of plaintiff and one of his witnesses; the decision ''is based upon evidence which under no conceivable theory could be true''; the conclusion of the trial court is one no ''reasonable man could have reached.'' Defendant's contention is untenable.

At the time of the transaction, plaintiff had received confirmation of a contract to build a dam for the government and was in the process of raising cash required by a bonding company. He was fearful the government would withdraw from the contract and charge him the difference between his bid and the next higher bid; he needed the money ''quite badly.'' Defendant was in the business of loaning money. Prior to April 12, 1950, the $40,000 loan had been arranged through a broker and escrow instructions had been signed calling for 6 per cent interest on $35,000 and 10 per cent interest on $5,000. Plaintiff had agreed to pay the broker 3 per cent of the loan as a commission.

Plaintiff first met defendant on April 12, 1950. He asked for the $10,000 loan. Defendant said he would make it at 10 per cent interest. The next day the parties met at the office of the escrow holder. Prior to that time, defendant had not said anything about changing the terms of the escrow relative to the $40,000 loan. At the escrow office, plaintiff told defendant it was very urgent he have the money, that he felt he would lose the contract with the government if he did not get the money in the bank that day. Defendant then said to plaintiff, ''If I make this loan I will have to have $1750.00 more.'' Plaintiff said he had to have the money. Defendant replied, ''Well, you are going to make a lot of money up there; you can pay more.'' Plaintiff said, ''I don't want to. A deal is a deal.'' Defendant countered, ''I won't give you the money unless you do it.'' Plaintiff testified the $1,750 was to be secured by the property which was to secure the $10,000 loan; while the escrow officer was writing the instructions relative to the $10,000 loan, defendant said, ''I want the $1750.00,'' and the escrow officer said, ''You don't want it on this, do you?''; the escrow officer, the broker, and defendant then did some figuring; the escrow officer then had the instructions, which we have quoted above, written, charging the $1,750 as a bonus against the $35,000 loan, and he (plaintiff) signed them. Plaintiff further testified that

his purpose in going to the office of the escrow holder on April 13 was ''To get $10,000 on that loan that we were talking about''; he did not go there to amend the escrow instructions in the escrow in which he was going to borrow $40,000; he signed the amendment ''under verbal protest . . . because it was a necessity for me to have this money and I was in a squeeze''; he knew the intent of the amendment, ''to subterfuge.''

Plaintiff's secretary, who was present at the office of the escrow holder on April 13, testified plaintiff went there ''for a loan of $10,000 that day,'' and ''during our meeting a paper was submitted to Mr. Murphy for signature on which— which indicated an additional amount over and above what Mr. Murphy had indicated to me that he was to pay, other than what he had indicated to me, and I asked him about it, and he seemed surprised concerning it, and seemed very hesitant in signing it. And I asked Mr. Ablow what was the reason for this additional charge, and he said it was for the money, and I said, 'Well, isn't Mr. Murphy paying you interest on it, and why is this tacked on at this late date?' And he—I don't recall his exact words, but Mr. Murphy did hesitate, and I objected, and I did say to Mr. Ablow that I have never seen such high-handed tactics in taking advantage of a circumstance. And I did say that I thought it was rotten, and soon after I left the room''; that defendant told her to ''shut up''; and, ''Q. You thought the $1,750 bonus was too much? A. Extra. Yes, I thought that was extra. I thought it was taking advantage of a situation, because Mr. Murphy did have to have the money, and had to have it right away. And that's what I told Mr. Ablow, that I did feel that he was being very high-handed in taking advantage of that circumstance at that particular time''; that prior to her leaving the room, nothing had been said about any loan other than the $10,000 loan.

Defendant knew that plaintiff was desperately in need of money.

Defendant deposited the $10,000 in the escrow on April 13. The next day plaintiff received $9,300 from that escrow and $36,500 from the prior escrow.

█ . ''The courts will not permit an evasion of the Usury Law by any subterfuge, and it is always permissible to show that a transaction, ostensibly lawful, actually constituted a usurious loan and was made with intent to evade the statute. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 616 [53

A.L.R. 725, 254 Pac. 956, 255 Pac. 805].) . . . [T]he law would be violated if the lender provided for a lawful rate of interest in the note itself, but required additional and excessive interest by the terms of a collateral agreement. . . . The test is whether there was the intent to evade the law, and the circumstances and negotiations which preceded the transaction may be material in determining such intent." (*Terry Trading Corp.* v. *Barsky,* 210 Cal. 428, 432 [292 P. 474].) Whether a transaction is usurious is a question of fact. (*Middlekauf* v. *Vinson,* 106 Cal.App.2d 204, 207 [234 P.2d 742].)

It is quite apparent, we think, that the findings are adequately supported. We can only consider the evidence most favorable to the findings, together with every inference to be reasonably drawn therefrom. As Mr. Justice McComb stated in *Marson* v. *Rand,* 107 Cal.App.2d 466, 468 [237 P.2d 18]: " 'It is not the province of a reviewing court to present, by way of opinion, a detailed argument on the sufficiency of the evidence to support the judgment where it appears that the question is one purely of determining which side shall be believed. The trial court having determined this with the witnesses before it, the controversy is settled.' "

Questions as to the credibility of plaintiff and the weight of the evidence were for the trial court. A reviewing court will not hold unsupported the trial court's findings merely because it might reasonably draw different inferences from those the trial court reasonably drew. A reviewing court cannot reject testimony of a witness that has been believed by the trier of the fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions. In order to say that testimony is inherently improbable, it must appear that what was related or described could not have occurred. Testimony which merely discloses unusual circumstances is not inherently improbable. Testimony which is subject to justifiable suspicion does not justify reversal of a judgment. The trier of fact may believe and accept a part of the testimony of a witness, and disbelieve the remainder or have a reasonable doubt as to its effect. On appeal that part which supports the judgment must be accepted, not that part which would defeat, or tend to defeat, the judgment. Unless it clearly appears that upon no hypothesis whatever is there substantial evidence to sup-

port a finding of the trier of fact, it cannot be set aside on appeal. (*Chan* v. *Title Ins. & Trust Co.*, 39 Cal.2d 253, 258 [246 P.2d 632]; *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 684, 692 [252 P.2d 649]; *Postier* v. *Landau*, 121 Cal.App.2d 98, 101 [262 P.2d 565].)

The question in this case was factual. No question of law was involved. There is evidence, argued at length here by defendant, that would have supported contrary findings. We may not reject the findings of the trial court and substitute findings of our own, even though we might arrive at a different conclusion. The trial court having found the evidence to weigh more heavily for plaintiff, the case is closed. We are impelled to repeat what we said in *Riesenberg* v. *Riesenberg*, 97 Cal.App.2d 714, 716 [218 P.2d 577], defendant "has failed to establish any greater grievance here than [he] might in any case where the evidence would support a conclusion either way but where the trial court has decided it to weigh more heavily for the opposite party. Such a choice between two permissible views of the weight of the evidence is not error."

Affirmed.

Wood (Parker), J., concurred.

Shinn, P. J., concurred in the judgment.

A petition for a rehearing was denied April 7, 1954, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1954.