[Civ. No. 20731.   Second Dist., Div. Three.   May 24, 1955.]

CHEMINOL CORPORATION (a Corporation), Respondent, v. IRWIN G. OHLSSON, Appellant.

Arch E. Ekdale, Gordon P. Shallenberger and George E. Toner for Appellant.

Frank R. Davis for Respondent.

ASHBURN, J. pro tem.*—Plaintiff recovered judgment upon a contract made for its benefit. Defendant, as appellant, argues that the trial judge misinterpreted the evidence and ignored a binding decision of an arbitrator; also that defendant had been released from liability if any ever existed. In the following statement of facts we adopt the evidence favorable to respondent at points of conflict, as we are bound to do. (*Murphy* v. *Ablow,* 123 Cal.App.2d 853, 858 [268 P.2d 80].)

Two men and two corporations ·weave the web of conflict. Henry T. M. Rice and Irwin G. Ohlsson started as equal owners of the stock of the corporations,—Ohlsson and Rice, Inc. and Cheminol Corporation. The former was engaged in some manufacturing, but chiefly in assembling for sale, of model airplane engines and parts for same; Cheminol was a sales organization. Differences having arisen between the two owners, Ohlsson (defendant herein), gave Rice an option, on · or about August 1, 1951, to buy his stock in Ohlsson and Rice, Inc., which option was exercised on October 13, 1951.[1] About July 1, 1951, Rice and Ohlsson had acquired from Ohlsson and Rice, Inc. its entire inventory of model airplane

---

*Assigned by Chairman of Judicial Council.

[1]Counsel have drawn freely and unjustifiably upon facts outside the record, but in instances where they agree we accept their statements as the equivalent of proof. This is one of those instances.

engines and parts and special tools for manufacture of same. They thereupon consigned the stock in trade to Cheminol Corporation (plaintiff herein) for sale. This was done by written agreement dated August 22, 1951, which was considered by the parties to be effective from August 1, 1951. The first subject of controversy is the right to certain commissions under this agreement.

The consignee agreed to use its best efforts to dispose of the goods and obligated itself to account to the two individual consignors monthly for proceeds of sales, less certain deductions, one of which was a 10 per cent commission upon net sales. Through August, September and October (pending the exercise, on October 13th, of Rice's option to buy Ohlsson's stock in Ohlsson and Rice, Inc.) sales were made by Ohlsson and Rice, Inc., to its existing customers and in its own name, but for the account of Cheminol; the purchase price was collected by Ohlsson and Rice, Inc., certain authorized deductions made by it, and the balance transmitted to Cheminol, which in turn would deduct its commission and other agreed items such as its direct costs and account to the individual consignors, Ohlsson and Rice, for the balance. During this first three months sales aggregating some $51,851.13 were made; ultimately a total of about $100,000. It is the commissions upon that first $51,851.13 which cause one of the disputes in this case. The business seems to have been conducted in the same manner until the inventory was entirely disposed of, but there is no controversy over later commissions. It should be noted that the sales were made and the moneys collected by the corporation Ohlsson and Rice, Inc. and not by the individuals Ohlsson and Rice or either of them, and that those sales were shown on the books of Ohlsson and Rice, Inc. as made for the account of Cheminol.

When the financial statement of October 31, 1951, prepared by Mr. Albert N. Greenfield, the regular accountant for Ohlsson and Rice, Inc., came in, defendant, who knew little about such matters, became dissatisfied. He objected to the manner in which overhead and inventory were handled. He refused to accept the report. The parties consulted Mr. Nathan Schwartz, attorney and accountant, who had been representing both of them in legal matters. This conference resulted in the selection of Mr. Arthur A. D. Benson, a certified public accountant, who was a stranger to all of them,

for the purpose of making an independent investigation of the disputed matters from an accounting standpoint. He has been referred to as an arbitrator, but his function seems to have been that of a third party employed to determine a fact with the understanding that his finding would bind the parties in interest, which falls short of an arbitration (see *Dore* v. *Southern Pac. Co.*, 163 Cal. 182, 189 [124 P. 817]; *Bewick* v. *Mecham*, 26 Cal.2d 92, 97 [156 P.2d 757, 157 A.L.R. 1277]); however, the parties did agree to be bound by his decision. And the immediate question is: What was he to decide? Mr. Schwartz instructed him ". . . to independently determine what would be a fair amount of overhead to allocate to the Cheminol business that was incurred by Ohlsson & Rice, Inc., in connection with the selling overhead and general administrative overhead, and also he was to make his own independent investigation into the changes in inventory to see that he would be satisfied that the inventories had been properly or substantially properly accounted for; and that he was to make a recommendation of some formula that could be used in the future for determining these overhead items such as selling and administrative overhead." Nothing was said about commissions on the August-October sales; indeed defendant had not raised that point. Mr. Benson made his examination, which was confined to the books and records, and rendered a report covering the period of August 1, 1951, to October 31, 1951. In effect it threw out the commissions on the $51,851.13 of sales made in August-October, but no specific mention was made of the fact. And there was no discussion of the matter between Rice and Ohlsson.

Their relations continued to deteriorate until it was agreed that Rice (who then owned all the stock of Ohlsson and Rice, Inc.) should purchase all of Ohlsson's interest in Cheminol, also in the consigned goods, the tools, and an indebtedness owing from Cheminol. By this time they were represented by different attorneys. On March 1, 1952, a series of agreements was made. One effected the sale of Ohlsson's stock in Cheminol to Rice, thus making him owner of all the corporate stock. Another was a "Bill of Sale and Assignment" which, for separate considerations, transferred to Rice defendant's half interest in consigned inventory on hand and in special tools jointly owned. Then follows paragraph 3. "In consideration of the sum of $23,700.00, all his [Ohlsson's] right, title and interest in and to any sums of money due him by CHEMINOL CORPORATION as Assignee of Messrs. I. G.

Ohlsson and H. T. Rice, which amount is subject to right of offset, and subject to any other valid assignments on file with CHEMINOL CORPORATION; this assignment being limited to the amount of $23,700.00. It is further understood and agreed that $23,700.00 is the estimated amount due Mr. Irwin G. Ohlsson by CHEMINOL CORPORATION at this date; that the actual amounts that may be due shall be determined by audit and upon being so determined, any additional sums found to be due Mr. Ohlsson shall be paid to him forthwith by CHEMINOL CORPORATION and if it shall be determined that Mr. Ohlsson owes any sums to CHEMINOL CORPORATION, he shall forthwith pay said amount to said corporation. The accounting shall be prepared by the firm of Greenfield and Company and shall follow the principles set forth by Mr. Benson of F. W. LaFrentz and Company. It is further agreed that if Mr. Ohlsson desires to have the report checked by Mr. Benson, he may do so, but shall be personally responsible to Mr. Benson for the cost of such services." The $23,700 was paid to defendant at that time. It will be noted that the parties specifically agree that the $23,700 is an estimated amount due; that the actual amount must be determined by audit; that on that basis Cheminol will pay to Ohlsson any additional amount found due him and ". . . if it shall be determined that Mr. Ohlsson owes any sums to Cheminol Corporation he shall forthwith pay said amount to said corporation." (Rice, being sole owner of Cheminol, in effect agrees to cause it to perform, and also contracts for its benefit.)

On the same occasion Rice, Cheminol and Ohlsson executed a release which recites that ". . . the parties desire that mutual releases be given and received by each party and by the corporation." The document then proceeds with a three-way general release subject to one exception: "That excluded from this release is the liability of CHEMINOL CORPORATION to Messrs. Ohlsson and Rice for sales made prior to date of this rel[e]ase of consigned merchandise owned by Messrs. Ohlsson and Rice as tenants in common, for which CHEMINOL CORPORATION shall account, subject to right of offset and valid assignments; that the actual amounts shall be determined by audit as provided in paragraph 3 of that certain Bill of Sale and Assignment from Irwin G. Ohlsson to Henry T. M. Rice, dated March 1, 1952."

The audit was made by Greenfield and Company, and it showed an indebtedness to defendant of $17,945.38, instead

of $23,700; a difference of $5,754.62, the amount for which plaintiff sues. Demand for payment was made on defendant, who thereupon employed Mr. Benson to check the Greenfield audit. Benson concluded and reported that Greenfield had not followed ". . . the principles set forth by Mr. Benson. . . ." and that the Greenfield result was off to the extent of $6,249.39—made up of three items, viz.: $5,185.11, a 10 per cent commission on the $51,851.13 of sales made in August to October, 1951, inclusive; $485.42, difference in overhead computation for same period; $578.86, difference in overhead computation for period from November 1, 1951, to February 29, 1952. Appellant contends that there is no liability to plaintiff because the figures compiled according to ". . . principles set forth by Mr. Benson . . ." so show and (2) any such liability was released by the document of March 1, 1952.

First as to the release. The quoted paragraph of that document, upon which appellant relies, was dictated by Ohlsson's attorney as a substitute for one drafted by Rice's counsel. The attorneys described this language as a "one way street" and that of Mr. Davis, Rice's counsel, as a "two way deal." And Ohlsson contends on this appeal that the redrafting was intended to preserve liability of Cheminol to defendant if the audited debt exceeded $23,700, but to release Ohlsson from liability with respect to any overpayment which he might have received; this, notwithstanding his express agreement in a contemporaneous instrument to make payment of same to the corporation.

The trial court held that the documents were not ambiguous and that they do not spell the result which appellant claims. The judge stressed the phrase "which amount is subject to right of offset"; and properly. Reference to the consignment agreement shows that setoff of Cheminol commissions was to be made before payment of net sales proceeds to the consignors Rice and Ohlsson. And the document entitled "Release" incorporates by reference the contemporaneous agreement in which Ohlsson agrees to pay any deficiency resulting from the audit. This it did through the language "that the actual amounts shall be determined by audit as provided in paragraph 3 of that certain Bill of Sale and Assignment from Irwin G. Ohlsson to Henry T. M. Rice, dated March 1, 1952." Moreover it is a settled rule that documents executed at the same time, with one referring to the other, are to be construed as a single instrument. (Civ. Code, § 1642; 12 Cal.Jur.2d, § 123, p. 333.) Of course, the express promise

of the one instrument must prevail over the silence of the other. If this were not so, the court would have to read into the release instrument a covenant of defendant to pay any deficiency in order to make the same reasonable. (Civ. Code, § 1655.) The trial court properly ruled that plaintiff's claim was not released by either or both of the instruments of March 1, 1952.

Concerning appellant's contention that the Benson figures were correct, and that those of Greenfield were not right, he is confronted with a substantial conflict in the evidence and this court is, of course, bound by the trial judge's finding thereon in favor of plaintiff. It fairly appears that Mr. Benson exceeded his proper function in undertaking to determine whether commissions were due Cheminol upon the August-October sales, a question which had not been submitted to him; that he also erroneously assumed that those sales had been made by Rice and Ohlsson, Inc. on their own behalf whereas they were made, as their books showed, for the account of Cheminol Corporation. There was no agreement to be bound by Benson's findings upon matters not submitted to him, and the mistake just mentioned falls in that category. Opposed to Benson's testimony is that of Greenfield who says that all sales during that period were made by Ohlsson and Rice, Inc. for the account of Cheminol and that the books of the selling corporation so show. There is no perceivable bar to payment of commission on those sales under the circumstances. They took place during the transition period, before plaintiff had exercised his option to buy defendant's interest in Ohlsson and Rice, Inc.; both corporations were owned by Rice and Ohlsson equally; Ohlsson was president of Ohlsson and Rice, Inc.; it is inconceivable that this method of handling sales was not pursued with full knowledge and consent of both parties. Had those sales been made by the individual consignors there might be some merit in Mr. Benson's position; but, as they were made by a subagent for the consignee-distributor there is no bar to a commission, and the question of whether Cheminol (as a factor) had authority to delegate authority (Civ. Code, § 2368) is beside the point.

But, says appellant, be all that as it may, Greenfield in making his audit was to ". . . follow the principles set forth by Mr. Benson . . ." and this he did not do. Benson so testified. Greenfield said that there was no Benson principle to be followed in this matter of commissions. The trial judge

agreed with this view. We agree. The matter was never mentioned by Benson or anyone else until after March 1, 1952; his treatment of those sales does appear from his report made before that date; but he declared no rule or principle with respect thereto; he merely found as a fact that those sales had not been made by Cheminol. Had the parties wanted his determination for purposes of the March 1st sale they would have so provided. Benson was then in the individual employment of defendant. The parties chose Greenfield for an audit. He testified that Benson had laid down no principle for him to follow in this matter. The trial court correctly resolved this dispute in favor of plaintiff.

There is no controversy concerning the overhead items of $485.42 and $578.86. The trial judge allowed these amounts as fixed by Benson (holding his decision to be binding in this regard). He totaled those amounts, divided by two, and subtracted the result ($532.14) from $5,754.62, leaving a balance of $5,222.48, for which sum judgment was rendered in favor of plaintiff. Neither side questions the correctness of the judge's method of computing the amount of recovery.

Appellant's opening brief concludes with these words: ''In view of the dispute over amounts, interest should commence only after final determination of the amount due.'' That is all it says on the subject. This does not comply with the rules and the point is not entitled to consideration. (4 Cal. Jur.2d, § 480, p. 311.)

Judgment affirmed.

Wood (Parker), Acting P. J., and Vallée, J., concurred.