Appellate Department, Superior Court, Kern

[Civ. A. No. 24.   June 23, 1955.]

KNOEL L. CRAGIN et al., Appellants, v. RUFUS H. BROWN et al., Respondents.

884

Osborn & Hosking for Appellants.

Morris B. Chain for Respondents.

LAMBERT, P. J.—In this case the appellants (plaintiffs in the court below), Knoel L. Cragin and Mary F. Cragin, brought an action against Rufus H. Brown, Alma L. Brown and Roy Downum, respondents here and defendants in the court below. The action was brought to cancel the contract for the purchase of certain real property of which Rufus H. Brown and Alma L. Brown were the owners and Roy Downum was the real estate agent making the sale. The plaintiffs filed a notice of rescission and brought the action to rescind the contract and recover the amount which they had paid on the contract. The action was based on fraud.

It was alleged in paragraph 6 of the complaint, "That the defendant, Roy Downum, fraudulently and falsely represented to the plaintiffs that the aforesaid real property was zoned for business; that the said defendant, Roy Downum, well knew that the plaintiffs wished to establish a business on the aforesaid real property; that the defendant, Roy Downum, well knew that the said property was not zoned for business but was in truth and in fact zoned for residences only; that the plaintiffs relied upon the representations of the defendant, Roy Downum, that the plaintiffs could reason-

ably rely upon said representations; that relying upon said false and fraudulent representations of the defendant, Roy Downum, the plaintiffs were induced to enter into the aforesaid contract." This paragraph was denied by the defendants.

The court made the following finding of fact: "That it is not true that Roy Downum fraudulently and falsely represented to the plaintiffs that the real property described in plaintiffs' amended complaint was zoned for business purposes nor is it true that defendant, Roy Downum knew that said property was not zoned for business or that the plaintiffs relied upon any false representations of the defendant, Roy Downum, nor that the plaintiffs were induced into executing the contract described in plaintiffs' amended complaint on file herein." The court also found that Roy Downum was acting as agent of the defendants in obtaining the plaintiffs to purchase the property, and the court also found "That all of the allegations pertaining to fraudulent representations, knowledge, reliance and damages alleged in plaintiffs' amended complaint are untrue."

It will be seen from the finding of the court that the case presents nothing but a factual situation. The evidence that might have some bearing on the question is as follows as testified by the witness Knoel L. Cragin: "Mr. Downum took us up to the house and he showed us the place. We asked him if we could have a business here and he didn't actually say yes; he didn't say no; he just waved his arm and said, 'I don't see why not, there are signs all up and down the street.' Well, there are. There is an insurance sign, there is upholstery sign and others there." "Well, the actual thing that was said was we asked Mr. Downum if there was any reason why we couldn't have a business and his words were: 'I don't see why not, there are signs all up and down the street.'" Question by Mr. Hosking to same witness, "Now, Mr. Cragin, was there any further conversation concerning the house? A. Yes. Q. Can you repeat that? A. We went into the garage and he opened up the garage and showed us there was a two and a half car garage and we stood there and I told him, I said, 'Well, I can put a partition down through here and separate this into two halves, one for the shop and one for my workshop and storage,' and he said, 'Yes, that will be all right. The room lacks a little bit and you will have to patch a little bit here in the back quarter,' so I told him I had worked on roofing gangs years ago and that I could still repair the roof, and he said it

shouldn't cost us over five or six dollars to repair that roof and it cost us over forty and it still leaks. Q. Was there any other conversations that you can recall? A. That distinctly pertained to the house, I do not.''

The plaintiff, Mary F. Cragin, testified concerning the conversation preceding the contract that the ''. . . particular discussion was made at the shop later when we were first introduced to Mr. Brown. Mr. Brown and Mr. Downum came into the shop after we saw the house and we asked Mr. Brown and Mr. Downum if we could have a business in that area. Mr. Downum said he saw no reason why we couldn't. We asked him if there was any ordinance or any law against it and he said he could see no reason why we couldn't have a business there.''

Mr. David Leroy Downum, a defendant, concerning the transaction testified as follows: ''A. Well, there was something came up to that effect. I believe he said he was a musician; that he did a little bit of repair work. Q. That he was a musician? A. That he was a musician. But he said he did a little bit of repair work, worked on radios and amplifiers and stuff like that, and I warned him that if he was going to operate there that he should check, that he might have trouble with his neighbors, that it might be zoned, but we made no statement whatsoever as to the zoning of the property. Q. Did he at any time ask you if you knew that was zoned for business? A. I don't remember if he did. Q. Did you at any time express in words or directly mention or suggest that you did know that that particular property was zoned for business? A. No. Q. You did not? A. I didn't. Q. At the time this agreement of sale was entered into, did you have this agreement of sale for real property on the 19th day of March, '52, prepared? A. Yes.''

Rufus H. Brown, the owner, testified as follows: ''Q. What is your business and occupation, what was it on the 19th day of March, 1952? A. A grocery store. Q. You owned a grocery store? A. Owned and operated a grocery store. Q. Did you own a piece of property, a residential dwelling at 214 Francis Street? A. I did. Q. Did you place that for sale with any real agent agent? A. Roy Downum. Q. And did you have any conversation with the prospective purchasers of that property before they signed that particular contract as of the 19th day of March, '52? A. Yes. Q. Whom were you referring to—Mr. and Mrs. Cragin? A. Mr. and Mrs. Cragin. Q. Who else was present when you had that con-

versation? A. Roy Downum. Q. And how many days or weeks before this property, this agreement of sale of the 19th day of March, 1952, did that conversation take place? A. Oh, I don't know, just a day or two days or a short period of time. Q. Where did the conversation take place? A. It took place down in Riverview. Q. Riverview? A. Yes. Q. And in Mr. Downum's office? A. No, Mr. Cragin's place of business, residence. Q. Mr. Cragin's residence in Riverview. Is that right? A. That is right. Q. And what was said with regard to the issues before us, with regard to the sale and purchase of that real property or any conversations with regard to the zone state of the property which he owned? A. He went down there to interview them as a credit risk. Q. What was the conversation? A. The conversation was that they asked Mr. Downum could they move their business in there and he told them he didn't know, that they had better check because if they didn't they might have some trouble with their neighbors. That is about all that was said. Our other conversation pertained to me accepting them as a credit risk.''

At most the evidence presents a conflict, so let us take a look at the evidence with respect to the law applicable.

■ It should be observed here that this is an appeal from the municipal court to the appellate department of the superior court, and upon familiar principles this court need inquire only whether there was evidence of a substantial nature to support the judgment of the court below, and where reasonable minds might differ on the inferences to be drawn from a particular state of facts, the appellate department court will not substitute its conclusions for those reached by the trial court. (*Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598 at 603 [86 P.2d 829]; *Estate of Bristol,* 23 Cal.2d 221 at 223 [143 P.2d 689].) And, of course, the reason for this rule is grounded in the fact that the trial judge observed the witnesses and has a better opportunity, in fact the only opportunity, to intelligently judge of the witnesses' credibility.

■ The appellants' claim in their brief on appeal was that the real estate agent concealed the fact that the property was zoned, and, of course, it is elementary that fraud can be predicated on the concealment of facts which it would be the duty of a person to disclose; however, no such a pleading was presented in the amended complaint although the parties argued the question in the municipal court and also

888

in this court, but in view of the findings it is wholly immaterial. The appellant discloses the weakness of the appeal in the very first statement made in his brief, to wit: "The evidence does not sustain the finding of the trial court. 1. The findings of the trial court would necessitate the court assuming that the statement made by the respondent, Roy Downum, was true to the effect that he knew nothing about the zoning restrictions in Bakersfield and its environs and that he never looked into the zoning restrictions although he was in the business of selling real estate. Since the respondent, Roy Downum, was in the real estate business since 1944, it does not appear credible that the said respondent knew nothing about the zoning restrictions on a piece of property he was attempting to sell." ■ In other words, he asked this court to weigh the evidence that was given in the trial court when, of course, that is not the business of this court. ■ Whether a witness is credible or not is a matter for the trial judge to determine. The only exception to that rule is where the evidence is inherently improbable, and there appears to be no basis for the claim of inherent improbability in the testimony of the witnesses who testified in this case. The matter is very clearly stated in the late case of *Estate of Reed,* 132 Cal.App.2d 732, 735 [282 P.2d 935]: "A reviewing court will not hold unsupported the trial court's findings merely because it might reasonably draw different inferences from those the trial court reasonably drew. ■ A reviewing court cannot reject testimony of a witness that has been believed by the trier of the fact unless it is a physical impossibility that it be true, or its falsity is apparent without resorting to inferences or deductions. ■ In order to say that testimony is inherently improbable, it must appear that what was related or described could not have occurred. ■ Testimony which merely discloses unusual circumstances is not inherently improbable. ■ Testimony which is subject to justifiable suspicion does not justify reversal of a judgment. ■ The trier of fact may believe and accept a part of the testimony of a witness, and disbelieve the remainder or have a reasonable doubt as to its effect. ■ On appeal that part which supports the judgment must be accepted, not that part which would defeat, or tend to defeat, the judgment. ■ Unless it clearly appears that upon no hypothesis whatever is there substantial evidence to support a finding of the trier of fact, it cannot be set aside on appeal." (*Murphy* v. *Ablow,* 123 Cal.App.2d 853 at 858 [268 P.2d 80].)

There is also substance to the defense that the rescission was not made promptly or within a reasonable time. The record herein fully supports the claim that the fraud, if any, was waived. See *Schied* v. *Bodinson Mfg. Co.*, 79 Cal.App.2d 134 [179 P.2d 380]. However, there is no merit in the appeal on the ground first discussed. The judgment is affirmed; the respondent to recover his costs on appeal.

Bradshaw, J., and Main, J., concurred.