[Civ. No. 20754.   Second Dist., Div. Two.   Nov. 30, 1955.]

MYRON M. KINLEY, Respondent, v. FORD I. ALEXANDER, Appellant.

Pines & Walsh, Adele Walsh and Harry A. Pines for Appellant.

Landon Morris for Respondent.

McCOMB, Acting P. J.—From a judgment decreeing that (a) plaintiff was the owner of a right to participate in certain patent license royalties; (b) defendant holds title to such royalty interest in trust for plaintiff; (c) plaintiff was entitled to recover the sum of $196,263.96 from defendant for accrued royalties; and (d) plaintiff was entitled to one-half of the royalties thereafter accruing on such patent rights, defendant appeals.

Facts:* On December 15, 1942, United States Patent Number 2,305,261 was issued to plaintiff covering the method of removing sections of pipe which became stuck in an oil well. This is referred to as the "back-off" patent. About September 9, 1946, plaintiff learned that defendant was successfully using a similar back-off method in California and wrote him to notify him of the existence of the back-off patent. Up to this time plaintiff had made no successful use of his discovery and had been unable to persuade the oil industry in the mid-continent area to use it.

Following negotiations between plaintiff and defendant, on September 9, 1946, they entered into an agreement by which plaintiff assigned the legal title to the patent and the invention to defendant upon the understanding that defendant would exploit and develop its use for their joint benefit and would pay plaintiff one-half the royalty proceeds from the use of the patent, excluding revenues from its use in the states of California, Oregon and Washington.

Defendant violated the obligations imposed upon him by the agreement by secretly and fraudulently acquiring plaintiff's interest in the patent. This was accomplished in the following manner:

Commencing shortly after the agreement of September 9, 1946, was entered into, defendant falsely represented to plaintiff on numerous occasions that he believed the patent was weak and unenforceable. Plaintiff had reason to believe that the McCullough Tool Company was infringing upon the patent, and several times told defendant of his suspicions. Defendant replied that he could not proceed against the company unless plaintiff supplied him with evidence of its infringement. At these very times defendant not only knew

*The evidence is viewed in the light most favorable to sustaining the judgment, pursuant to the rule set forth in *Estate of Isenberg,* 63 Cal.App.2d 214, 216 [2] [146 P.2d 424] (hearing denied by the Supreme Court), and *Murphy* v. *Ablow,* 123 Cal.App.2d 853, 858 [1b] et seq. [268 P.2d 80] (hearing denied by the Supreme Court).

this company was infringing the patent, but he was actually assisting it in its unlicensed use of the patent.

During this period of time, defendant attempted to buy out plaintiff's interest in the patent for himself, but plaintiff refused to sell to defendant, telling him that if the patent was good enough for defendant it was good enough for him. Realizing he could not acquire plaintiff's interest in the patent directly from plaintiff, defendant finally told plaintiff that he himself was going to sell out and had a buyer, to wit, the Houston Oil Field Material Company, hereinafter referred to as "Homco," which would buy each of their interests for the same sum, that is, $50,000. Plaintiff told defendant that if he were selling out and they were both receiving the same price, namely $50,000 each for their respective interests in the patent, he would sell.

The fact was that in the negotiations between Homco and defendant, concerning which plaintiff knew nothing, the least amount for which defendant had offered to sell his one-half interest was the sum of $450,000. At the meeting in which defendant told plaintiff he was willing to sell to Homco, he offered to act as plaintiff's agent in negotiating and consummating a sale of plaintiff's interest to Homco, and specifically instructed plaintiff to stay away from Homco and not enter into negotiations with it. Plaintiff agreed to this and in fact stayed away, believing defendant was acting as his agent.

Plaintiff, believing defendant was selling his interest in the patent to Homco, upon defendant's instructions, gave an option to said company to purchase his interest in the patent for a total of $50,000. Thereafter, plaintiff assigned the same to Homco, still believing defendant also was selling his interest to the company for the same amount. Knowing that plaintiff had given his option to Homco in the belief that defendant was also selling his interest in the patent to that company for the same amount, defendant entered into an agreement with Homco, which he concealed from plaintiff, by which he agreed to grant Homco a license to use the patent for a royalty of 10 per cent of their charges for its use, with a minimum annual royalty of $20,000, provided that as a condition precedent to his granting the license, Homco would exercise plaintiff's option to purchase plaintiff's interest in the patent and then assign it to defendant.

This transaction was consummated without the knowledge

of plaintiff with the result that defendant not only did not sell his patent to Homco in accordance with his representation to plaintiff, but retained it and also acquired plaintiff's interest therein for nothing, thereby securing for himself alone all the benefits of the license agreement with Homco.

On October 21, 1947, defendant entered into a so-called "Commission Agreement" with the Ford Alexander Corporation, which was in fact a disguised agreement for the payment of additional royalties to defendant for the use of the patent. Defendant concealed the existence of this agreement from plaintiff, and concealed the extra royalty he received thereunder, by cutting off the accounting sheets which he submitted to plaintiff those parts which disclosed payment to him of such extra royalties.

### *Defendant's Contentions*

First: *There is not any substantial evidence to sustain the trial court's material findings of fact.*

This contention is devoid of merit. In his brief, defendant has set forth only the evidence favorable to his contentions and has utterly disregarded conflicting evidence which supports the findings in favor of plaintiff.

It is not the province of a reviewing court to present by way of opinion a detailed argument on the sufficiency of the evidence to support a judgment, where, as here, it appears that the question is one of resolving a conflict in the evidence, and determining which witnesses are to be believed or disbelieved. Mr. Justice Vallée, in *Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 575] (hearing denied by the Supreme Court, apropos of this rule, pertinently said:

"Andre Gide once observed: 'Everything has been said already; but as no one listens, we must always begin again.' With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is *any* substantial evidence to support them; that we have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. No one seems to listen." (See *Murphy* v. *Ablow*, 123 Cal. App.2d 853, 858 [1b], et seq. [268 P.2d 80] (hearing denied by the Supreme Court); *Marson* v. *Rand*, 107 Cal.App.2d 466, 468 [3] [237 P.2d 18] (hearing denied by the Supreme

Court); see also numerous cases cited in 6 West's Cal.Dig. (1951) Appeal and Error, § 989, p. 606.)

We have examined the record and are of the opinion there was substantial evidence which, when considered with such inferences as the trial court may have reasonably drawn therefrom, sustains each and every material finding of fact upon which the judgment in favor of plaintiff was necessarily predicated. A detailed recital of the evidence supporting the findings in favor of plaintiff would serve no useful purpose. (*Thatch* v. *Livingston,* 13 Cal.App.2d 202, 203 [56 P.2d 549].)

Second: *The trial court erred in finding against defendant's affirmative defenses.*

This contention is devoid of merit.

■ A. The first affirmative defense was that plaintiff was guilty of laches in prosecuting his action.

This proposition is erroneous. The fraud against plaintiff was consummated in May of 1949. The present action was instituted on December 27, 1951, approximately two years and seven months after the actual commission of the fraud. Thus it is apparent the action was brought within the three-year period provided by the statute of limitations (Code Civ. Proc., § 338, subd. 4.) Defendant's claim that since plaintiff had filed a previous action and dismissed it without prejudice before he instituted the present action, plaintiff was barred from filing the instant case is untenable. ■ The mere filing of an action and dismissing it without prejudice is not a bar to the filing of a subsequent action, within the statutory period, predicated upon the same cause of action.

B. The second affirmative defense alleged by defendant was that he and Homco were joint tort feasors.

The trial court found against this contention, which finding the record discloses was sustained by substantial evidence. The fact is there was an entire absence of evidence in the record to support a contrary finding.

■ C. The third to sixth, inclusive, affirmative defenses are predicated upon the theory that a settlement of the differences between the parties had been made by plaintiff's cashing on June 20, 1949, a check from defendant for $2,901.80.

Clearly the cashing of this check did not constitute a bar to the present action, nor does it sustain defendant's contentions, because the check was given by defendant to plaintiff for unpaid *royalties* due him, and, as later appears, this oc-

curred before plaintiff discovered the fraud. This is fully demonstrated and borne out by the following correspondence between the parties. On June 27, 1949, the check was mailed to plaintiff by defendant, accompanied by this letter:

"Dear Mr. Kinley:

"Upon his return to the city, Mr. Alexander contacted us and has asked that we transmit to you the enclosed accounting covering royalties due you from him under the agreement of September 9, 1946, for the months of January, February, March, April and May, 1949, together with his check to your order in the sum of $2901.80 in payment of your share of said royalties."

In response to the foregoing letter, plaintiff wrote defendant on June 29, 1949, as follows:

"Dear Mr. Alexander:

"After I talked with our attorney regarding the 'Receipt' which you sent with the royalty check, I do not feel that I need to sign this instrument as the check sent represented back royalty which was already due.

"The check has been deposited and the cancelled check will act as your receipt. I do not quite understand why this 'Receipt' was sent."

D. A seventh affirmative defense was predicated upon the theory that plaintiff by his dealings with Homco affirmed the previous actions of defendant and waived any fraud upon the latter's part.

This contention is clearly fallacious. Plaintiff was not obligated to attempt to rescind upon discovery of the fraud (*Mabry* v. *Randolph,* 7 Cal.App. 421, 426 [94 P. 403]; 12 Cal.Jur. p. 784, § 50); he was entitled to stand upon his right to have a constructive trust declared, with a concurrent equitable monetary adjustment made by the court. There is ample evidence in the record which sustains the finding that plaintiff did not intend to waive or affirm or acquiesce in the fraudulent acts of defendant.

Third: *The trial court erred in settlement of the accounting in the following particulars*:

A. In treating amounts received by defendant for services rendered to Petro-Tech Service Company in Venezuela as royalties, subject to the accounting.

This proposition is not sound for the reason that the license agreement between plaintiff and defendant gave plaintiff

one-half the royalties from licenses of the "patent," the patent being expressly defined in the license agreement to include both the United States patent and the invention itself. Defendant testified that the money he received and was receiving from Petro-Tech was royalty payments to him. Therefore this sum was properly included in the accounting.

■ B. In classifying "commissions" received by defendant from Ford Alexander Corporation as royalties, subject to accounting.

This classification was correct. The trial court properly held the amount received by defendant from the Ford Alexander Corporation was *royalty* for the use of the patent, and not commissions to defendant for other services. The evidence sustains this finding as appears in the statement of facts, *supra*.

■ C. In disallowing to defendant a credit for one-half the commissions and royalties refunded to the Ford Alexander Corporation.

Defendant's assertion is fallacious for the reason that there is no evidence in the record, as contended, that the litigation which defendant settled with the Ford Alexander Corporation involved a dispute over royalties for the use of the patent, and therefore plaintiff should be charged in the accounting with one-half of such amount. The burden was upon defendant to establish by competent evidence this affirmative defense. He introduced none and none was received in evidence. Therefore the trial court properly found against defendant's contention on this issue.

■ D. In disallowing to defendant a credit in the sum of $45,000, representing the purchase price payable by Homco to plaintiff.

Defendant argues that although plaintiff received only $35,000 from Homco, he should be credited with one-half of $45,000, which was the sum Homco originally agreed to pay plaintiff. This theory is unsound because all that plaintiff actually received from Homco was $35,000; hence defendant was properly credited with one-half this amount, which is in accordance with the rule announced in *Schwarting* v. *Artel,* 40 Cal.App.2d 433, 441 [105 P.2d 380].

■ E. In disallowing to defendant a credit for the refund adjustment to Homco.

It is defendant's contention that he should have received credit for the entire $35,000 which plaintiff received from

Homco and plaintiff charged with one-half the $30,000 he subsequently agreed to repay Homco. The trial court found it would be inequitable for plaintiff to have restored to him his royalty rights and also retain the $35,000 received by him. He therefore gave defendant credit for the $35,000 received by plaintiff; disallowed defendant credit for the $30,000 he was obliged to pay Homco. This was equitable. It is to be noted that plaintiff prayed for interest at the rate of 7 per cent per annum, to be added to the amounts due him. An allowance of interest would have been proper, but was not awarded. (Civ. Code, §§ 3287-3288.) Interest on plaintiff's share of royalties from dates due to date of judgment, after allowing defendant credit for interest on one-half the $35,000, would have amounted to $15,974.51 more to plaintiff. It appears that the trial court dealt fairly and equitably with the parties.

Fourth: *The trial court erroneously excluded material testimony on cross-examination.*

This final contention is likewise devoid of merit. One of the issues presented was whether plaintiff, after being made aware of all the facts, preferred to keep the $45,000 obligation from Homco rather than to set the transaction aside and repossess himself of his royalty rights of unknown value.

During the course of the cross-examination of plaintiff the following occurred:

"Q. By Mr. Houck: When you learned about the transaction entirely, which you testified was on August 23, 1949, were you then dissatisfied with your $45,000 price for your patent rights?

"The Court: Do you object, counsel?

"Mr. Morris: No, I decided not to object, your Honor.

"The Court: Your question is rather vague and indefinite, but we will let the witness answer it.

"Q. By Mr. Houck: Well, let me rephrase it. I am referring now to the period when you learned about the entire transaction by having examined the documents in Mr. O'Leary's office. That I think was August 23, 1949. Now, going back to that time were you then satisfied with your $45,000 price for your patent rights?

"Mr. Morris: Well, now, again I want to object on the grounds that that is incompetent, irrelevant and immaterial.

"The Court: I will sustain the objection to that question,

counsel. It is a question that has too many possibilities for misinterpretation.

"Q. By Mr. Houck: Were you then willing to return the money to Homco if you got your rights back?

"Mr. Morris: Now just a moment. I object to that again on the ground it is a hypothetical question.

"The Court: Sustained.

"Q. By Mr. Houck: All right. Isn't it a fact, Mr. Kinley, that when you learned about the entire details of the Homco-Alexander transaction on August 23, 1949, you were still satisfied with the price that you received for your rights, and you weren't willing to give up that price in return for your rights?

"Mr. Morris: Of course the question is complex and compound, but I think I understand what he is driving at, and furthermore it is immaterial.

"The Court: Objection sustained, counsel."

Defendant contends that the trial court ruled to his prejudice in sustaining the objections set forth above. Defendant's thesis is not well taken for the following reasons:

I. The questions objected to and concerning which defendant now complains related to whether or not plaintiff was dissatisfied with the $45,000 he received from Homco, and whether or not he was willing to give back the $45,000 to Homco if he got his patent rights back as of August 23, 1949, at which time plaintiff learned the truth concerning the transaction between Homco and defendant. As of August 23, 1949, defendant had neither paid $45,000 nor any other sum for plaintiff's rights in the patent, nor was he under any obligation to do so. It was not until August, 1950, that he agreed fraudulently with Homco to repay part of this sum. Plaintiff could have answered these questions only affirmatively or negatively. Had he answered either way, it could not have been material so far as defendant was concerned because plaintiff's state of mind towards Homco on August 23, 1949, since Homco was not a joint tort feasor with defendant, had no probative value concerning plaintiff's state of mind toward defendant's fraud.

The material question was whether or not plaintiff at that time was satisfied with the $45,000 and satisfied to let defendant retain plaintiff's interest in the patent also. Such a question was actually asked, no objection was made, and it was answered.

II. Defendant had already examined into plaintiff's state of mind relative to the purchase price he received from Homco. Speaking as of April, 1949, plaintiff testified:

"Q. And you thought that was a good idea? A. I thought it was a good idea. Also, I asked him about how he was going to handle it for income and he told me that he was going to handle his as capital gains. We probably talked about something else, but anyway I consented. I said, 'Well, if you are going to sell and figure that it is good to get out, why, I will get out too.'

"Q. And, 'If you will sell for $50,000, so will I.'? A. I will sell for $50,000.

"Q. You were satisfied with the $50,000 price then at that time? A. That's what he was getting.

"Q. And you were satisfied with it under those circumstances? A. If he was getting fifty, yes."

From the foregoing, it is apparent that the trial court's rulings were correct.

In view of our conclusions no useful purpose would be served by discussing other minor points urged by defendant, since it would not result in a reversal of the judgment.

Affirmed.

Fox, J., and Ashburn, J. pro tem.,* concurred.

A petition for a rehearing was denied December 23, 1955.

---

*Assigned by Chairman of Judicial Council.